**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

STEVEN TIELSCH

                                         2:16-CV-00594-LPL

    v.

MARK CAPOZZA et al

## PETITIONER'S RESPONSE TO RESPONDENTS' (COMMONWEALTH – ALLEGHENY COUNTY DISTRICT ATTORNEY) ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

AND NOW, comes Petitioner, Steven Michael Tielsch, by and through his attorney, Robert E. Mielnicki, Esquire, and files the following Reply to Respondent's Answer to Petition for Writ of Habeas Corpus:

**As an initial matter, if this Honorable Court was waiting for the pursuit of the previously requested grand jury transcripts to be resolved, such has been resolved. Counsel obtained such from the Honorable Norman A. Krumenaker, III of the Cambria County Court of Common Pleas, who oversees all statewide grand juries.**

### Summary of Respondent's (Commonwealth – Allegheny County District Attorney) Argument in Response

As an initial matter, Respondent (the Commonwealth) provides an accurate summary of the factual background and procedural history pertaining to Petitioner's claims. (Respondent's Answer, ECF Doc. 20, pp. 1-10 (hereinafter "ECF Doc. 20"))

A fair summary also appears in the published decision of the Pennsylvania Superior Court, although a more accurate summary pertaining to the facts surrounding Claim 1 ("The Musselwhite Issue") appears in the dissent of said opinion. *Commonwealth v. Tielsch*, 934 A.2d 81 (Pa.Super. 2007).

Respondent concedes that Petitioner timely filed his petition. (ECF Doc. 20. P. 11). Respondent contends, however, in the Answer to Petition for Writ of Habeas Corpus that Petitioner's claims are procedurally defaulted and/or without merit. Id. at 14 - 34.

With respect to the  claim that the trial court's exclusion of the testimony of Charles Musselwhite and Stephanie Maddich violated Petitioner's rights to due process, compulsory process, and confrontation, Respondent contends that the decision of the Pennsylvania Superior Court was not an unreasonable application of clearly established federal law, basically by arguing that Musselwhite's statement or statements were distinguishable from the "third-party confessions" excluded in *Chambers v. Mississippi*, 410 U.S. 284 (2006), *Green v. Georgia*, 442 U.S. 95 (1979) and *Holmes v. South Carolina*, 547 U.S. 319 (2006). (ECF Doc. 20, pp. 19 – 21)

Petitioner disagrees and suggests that the embodiment of the clearly established federal law regarding the right to introduce exculpatory is not necessarily set forth exclusively by those cases. Respondent concedes that this issue was properly presented to the Pennsylvania Superior Court and is properly before this

2

Honorable Court. Id. at 16. Respondent does not really address the law established by the aforementioned cases or how the Pennsylvania Superior Court reasonably applied such, as it asserts. Respondent does not even endeavor to argue that the Pennsylvania Superior Court was correct in how it handled this issue.

Respondent asserts that Petitioner's claim that appellate counsel was ineffective for failing to argue, on direct appeal, that Charles Musselwhite's statement was an excited utterance, is procedurally defaulted due to the Pennsylvania Superior Court finding the claim waived. Id. at 22. Respondent further argues that substantively this claim is without merit as Petitioner failed to meet the standard for ineffectiveness outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Id. at 23 – 25. Petitioner disagrees with this contention as the Pennsylvania Superior Court was wrong in finding that Petitioner did not properly present this claim in his appeal of the denial of his Petition for Post-Conviction Relief.

On the two remaining claims; prosecutorial misconduct (introduction of the now infamous Exhibit 31 and presentation of Michael Starr as a witness who denied the Commonwealth had offered him anything for his testimony) and ineffective assistance of counsel regarding Petitioner's right to testify, Respondent again concedes that the claims were exhausted and therefore are properly before this court. Id. at 26, 30. Regarding the prosecutorial misconduct claims, Respondent argues that the Pennsylvania Superior Court's determination that the two instances of alleged

prosecutorial misconduct were not supported by the record, was not a decision that was clearly contrary to or an unreasonable application of clearly established federal law. Id. at 26-29.

Respondent belittles Petitioner's request for an evidentiary hearing and contends that he must proceed on the state court record. Id. at 27. Petitioner submits that is incredible that, to this date, he has never been given an opportunity to make an adequate record through a properly conducted evidentiary hearing. Petitioner was denied the right to develop such at every turn, while in state court. In other words, with respect to the prosecutorial misconduct claim regarding Exhibit 31, a prosecutor who was reckless, at best, must be accepted at his word regarding this claim.  There is no other way to interpret the Commonwealth's argument.

Petitioner trusts that this Honorable Court understands the dilemma that Petitioner was placed in with respect to his claims of prosecutorial misconduct. Counsel sought to obtain the transcript of Michael Starr's Rule 35 hearing but this Honorable Court decided that such was privileged. This Honorable Court has, however, seen such transcript and Petitioner believes that it is aware of ADA Fitzsimmons' involvement in Starr's Rule 35 sentence reduction. Recent caselaw (albeit unpublished) from the Third Circuit Court of Appeals indicates that this claim may be developed based upon circumstantial evidence.

Finally, on the second claim of ineffective assistance of counsel, Respondent argues that there is no evidence to show that Petitioner's decision not to testify was influenced by counsel in a way that was clearly contrary to or an unreasonable application of the ineffectiveness standard outlined in *Strickland*. Id. at 30-34. Respondent points out the colloquy Petitioner completed. Id. at 32-33. Such colloquy, however, does not demonstrate that such was influenced, or not, by the erroneous advice that trial counsel gave Petitioner. Again, Petitioner was not given an evidentiary hearing on this claim in state court.

## Claim 1: Trial Court Erred in Excluding Testimony – The Musselwhite Issue

Petitioner's right to due process, compulsory process and/or confrontation were denied by the trial court's refusal to admit evidence that another may have committed the crime and/or that person himself admitted to committing the crime Petitioner was convicted of. The Supreme Court has held, and Respondent agrees (ECF Doc. 20, p. 16), that a federal court may review state evidentiary decisions when the individual, as Petitioner does here, asserts that the state court decision infringed on rights guaranteed by the Federal Constitution. *Estelle v. McGuire*, 502 U.S. 62 (1991). As stated in *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Here, relevant exculpatory testimony regarding the defense's

theory that someone else committed the offense charged was excluded as inadmissible hearsay.

Respondent relies on *Chambers* (ECF Doc. 20, p. 19), yet conveniently overlooks that the facts of *Chambers* are strikingly similar to those of the case now before this Honorable Court. In *Chambers*, the defendant was charged and convicted of murdering a police officer. *Chambers,* 410 U.S. at 285. At trial, Chambers sought to introduce evidence that another person, MacDonald, had admitted to Chambers' counsel and other witnesses that he, MacDonald, was in fact the one who shot the police officer. *Id.* at 293-94. The trial court excluded this evidence as inadmissible hearsay. *Id.* Here, Petitioner sought to introduce the testimony of Stephanie Maddich, who would have testified that Charles Musselwhite confessed to her, on the night of the shooting, that he had committed the crime. Here, as in *Chambers*, the trial court ruled that the testimony was inadmissible hearsay.

In *Chambers*, the Supreme Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 302. *Chambers* held that the defendant's due process rights were violated by the trial court's failure to admit the hearsay evidence under the "statement against interest" exception. *Chambers* held that the Due Process Clause affords criminal defendants the right to

introduce into evidence third party declarations against their own penal interest when the statements are deemed to be reliable. Id. at 302.

In determining reliability, the Court looked at multiple factors, including the fact that MacDonald made statements to friends inculpating himself in the murder shortly after the shooting and that there was other evidence corroborating MacDonald's involvement, namely his presence in the area at the time of the shooting and his sworn statements. *Id.* at 300. Similar facts are present in the instant case. Charles Musselwhite called Stephanie Maddich just hours after the shooting and confessed that he shot the victim. Furthermore, Musselwhite spoke with police in the days following the crime and stated that he had been present near the scene. The reliability that the statement was made was clear – Musselwhite would have testified that he made the statement to Maddich. As for reliability in general, Judge Bowes of the Pennsylvania Superior Court summed it up as follows:

> In the present case, the following facts are relevant. There were two police reports regarding Musselwhite. The first report indicated that Stephanie Maddich informed police that Musselwhite, her former boyfriend, telephoned her at approximately 2:30 a.m. on April 18, 1986, five hours after the shooting. He sounded "very worried" and "very upset" and stated that he "was in the back seat of a car when the passenger in the front went be[r]serk and shot a rabbi or priest." Police Report, 5/13/86, at 1.
>
> Police interviewed Musselwhite, and he admitted that he was in close proximity to the shooting during the pertinent time frame, but denied making the telephone call to Ms. Maddich. Police then obtained a search warrant for the telephone records of Musselwhite's residence, and those records confirmed that a telephone call to Ms. Maddich from

Musselwhite's home was made five and one-quarter hours after the homicide occurred and that other telephone calls to her were made thereafter. *Id.* When confronted, Musselwhite admitted to police that "a few days after the murder, he telephoned an ex-girlfriend named Stephanie Maddich who had moved to New Jersey and told her that 'he did it.' " Police Report, 12/02/01, at 1. He then told police that he only made this admission to impress Ms. Maddich.

At his second and fourth trials, Appellant sought to present the testimony of Ms. Maddich regarding Musselwhite's statement the night of the murder. In his proffer, Appellant indicated that Ms. Maddich would testify that Musselwhite was "frantic" and "crying" and was asking her what to do and that she told him to go to police. N.T. Musselwhite Argument, 12/3/01, at 7. Appellant also sought to present Musselwhite as a witness; in his offer of proof, Appellant indicated that Musselwhite would admit informing the police that he told Ms. Maddich that he was the perpetrator of the crime but would then state that his admission was false.

The trial court denied admission of Musselwhite's two statements based upon application of the hearsay rule. Appellant complains that application of the hearsay rule in this instance violated his due process rights. Appellant's Brief at 85. Appellant argues that there were substantial reasons to conclude that the testimony of Ms. Maddich and Musselwhite was reliable and were therefore admissible under *Chambers* and *Green.* In my view, this position is meritorious. …

As Appellant notes, Musselwhite's frantic telephone call on the night of the murder had "earmarks of reliability." Appellant's Brief at 85. Like the statement at issue in *Green,* Musselwhite's statement to Ms. Maddich was spontaneously made to a close friend. There was no reason for him to fabricate that he had witnessed the murder. Moreover, there can be no doubt that Musselwhite actually witnessed this event. When Musselwhite told Ms. Maddich about the murder at 2:30 a.m., the details of the 9:15 p.m. murder had not been disseminated publicly. Musselwhite knew all of the significant details of the crime, and those facts could have been related only by someone who actually witnessed the crime. Specifically, he said that the shooting was

unprovoked, had been committed by a front seat passenger, and the victim was a religious figure.

Indeed, Musselwhite's statement to Ms. Maddich on the night of the murder bore all the earmarks of trustworthiness exhibited by an excited utterance. Musselwhite was frantic when he made the call and did not simply relay the events of the evening in narrative form but rather sought Ms. Maddich's advice on his next course of action. Musselwhite had just viewed an extremely startling event, a cold-blooded murder of a religious person. Ms. Maddich described Musselwhite's emotional state as very nervous and upset. She confirmed to Appellant's counsel that when he made the call, Musselwhite was crying and frantic while on the telephone and was uncertain as to what to do. *See Commonwealth v.* *Keys*, 814 A.2d 1256 (Pa.Super.2003) (discussing excited utterance exception to hearsay rule); Pa.R.E. 802(2).
…

Appellant was also prohibited from presenting Musselwhite as an exculpatory witness. In his offer of proof, Appellant stated that Musselwhite would have confirmed that he admitted to police that he told Ms. Maddich that he committed the murder. He then would have testified that he actually did not commit the murder but was attempting to impress her. The trial court precluded this testimony also based upon application of the hearsay rule. That application was untenable as Appellant sought to present the testimony of the declarant himself, Musselwhite, rather than a person who heard the declarant confess to the crime. *Cf. Commonwealth v. Bracero*, 515 Pa. 355, 528 A.2d 936 (1987) (plurality) (defendant properly prevented from calling witness to testify that a third party confessed to the crime).

In addition, there were strong indicia that Musselwhite was indeed connected to this murder. He admitted to police that he was in the vicinity of the murder on the night in question. He telephoned Ms. Maddich under extreme emotional duress, revealing details of a crime that had not yet been broadcast over the news, and then denied to police that he made the call. However, the fact that he contacted Ms. Maddich was substantiated by telephone records. Musselwhite then admitted to police that he had confessed to the crime.

In this case, it is critical to recall that while the Commonwealth effectively excluded the statements made by Musselwhite, it then successfully prosecuted Appellant based on the very same type of evidence, statements made to third parties. The preclusion of Musselwhite's statements, which bore significant indicia of reliability, served no legitimate state interest, especially in light of the fact that the Commonwealth's case rested on the same type of evidence it prevented Appellant from introducing at trial. The trial court's decision to preclude the Musselwhite evidence disproportionately infringed upon the right of the accused to present a complete defense. Thus, I believe that Appellant's Constitutional rights were violated, and he is entitled to a new trial.

*Commonwealth v. Tielsch*, 934 A.2d 81, 97 – 100 (Pa.Super. 2007) (J. Bowes dissenting). Petitioner keeps citing the dissent because the detailed analysis done by Judge Bowes saves him time from citing numerous times to the record. This is the record the Superior Court had. Judge Bowes simply sets it forth better than Counsel can do.

There is sufficient independent evidence which speaks to the reliability of Maddich's testimony. First and foremost, Musselwhite later admitted to police that he made the statement to Maddich. This fact alone, that the declarant admitted he made the statement, is enough to bolster the reliability of the excited utterance testimony. However, additional evidence exists which further bolstered the reliability of the testimony. Musselwhite's statements during the phone call between Musselwhite and Maddich, which occurred just five hours after the shooting, indicate that Musselwhite was at the scene of the shooting as he knew details of the crime, specifically that someone shot a "rabbi" or "priest." Musselwhite's knowledge

of details of the crime, evidence that Musselwhite was in the vicinity of the scene, and Musselwhite's undisputed statement to police that he made the phone call to Maddich, provide independent evidence sufficient to bolster the reliability of the excited utterance testimony.

Respondent criticizes Petitioner for pointing out the dissent of Judge Bowes in *Commonwealth v. Tielsch*, 934 A.2d 81(Pa.Super. 2007). (ECF Doc. 20, pp. 19 – 20.) That dissent, however, provides an excellent summary of the factors supporting the reliability of the statement of Musselwhite.

The analysis of the Pennsylvania Superior Court began as:

> An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule." *Commonwealth v. Seibert*, 799 A.2d 54, 67 (Pa.Super.2002) (internal quotation marks and citation omitted). *See also Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Furthermore, our Pennsylvania Supreme Court has observed that an accused exercising his or her right to present evidence "must comply with established rules of procedure and evidence...." *Commonwealth v. Bracero*, 515 Pa. 355, 363, 528 A.2d 936, 939 (1987) (quoting *Chambers, 410 U.S. at 302, 93 S.Ct. 1038*).

*Tielsch*, 934 A.2d at 90. The Superior Court believed then that evidence which is clearly exculpatory should still be excluded if it is inadmissible under an established state rule of evidence. The Superior Court also relied on a state case that suggests that exculpatory evidence is inadmissible if it does not comply with established state rules of procedure. Clearly, a state cannot defeat a defendant's right to confrontation by enacting rules that do not comply with said right. Reasonable minds can differ

but Petitioner submits that evidence which must be admitted under *Chambers*, *Green* and *Holmes,* need not be admissible, or otherwise not excluded, under a state rule of evidence. That is essentially the principle of those three cases.

The Pennsylvania Superior Court then stated:

> The Supreme Court held that the *assurance of reliability* was present under the facts in *Chambers,* as each of [the confessor's] confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case.... Third, ... each confession here was in a very real sense self-incriminatory and unquestionably against interest. Finally, if there was any question about the truthfulness of the extrajudicial statements, [the confessor] was present in the courtroom and was under oath. Id., at 300–301, 93 S.Ct. 1038. In consideration of the totality of these indicia of reliability, the Supreme Court held that the "mechanistic" application of Mississippi's rules of evidence by the trial court had deprived Chambers of his right to due process of law. Id., at 302, 93 S.Ct. 1038.

*Id*. **It is difficult to see how the above did not apply squarely to the offer of proof made by Petitioner regarding the Musselwhite statement. Applying the holding in *Chambers*, the circumstances surrounding Musselwhite's statements to Maddich provided considerable assurance of their reliability.**

The trial court's ruling in the instant case, was contradictory to clearly established federal law, the *Chambers* holding, which effectively ruled that the Due Process Clause allows the admissibility of evidence under an exception with higher standards for admissibility than the one at issue in this petition (more than likely "excited utterance"), and consequently, the trial court's decision to exclude the

testimony was a violation of the defendant's constitutional right to due process. The holding and analysis of the Pennsylvania Superior Court was an unreasonable application of clearly established federal law. It was, at least, a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding

The Pennsylvania Superior Court acknowledged that Musselwhite admitted that he called Maddich and told her he was the shooter. *Id*. at 91. The Pennsylvania Superior Court, in the end, while purporting to address the Musselwhite statement as a constitutional issue, held that the trial court did not abuse its discretion in excluding it. *Id*. **How does the abuse of discretion standard even enter the equation when addressing a constitutional issue?**

The Pennsylvania Superior Court came close to isolating the clearly established federal law that is set forth in *Chambers*, *Green* and *Holmes*. In the end though, the Superior Court denied Petitioner his right to present exculpatory evidence because while Musselwhite admitted, on one occasion, to being a murderer, on two other occasions he gave contradictory statements. *Tielsch*, 934 A.2d at 91. **In other words, Musselwhite might be a murderer and a liar, but since he might have been both, Petitioner could not present the clearly exculpatory evidence that he gave a statement, an excited utterance, that he was the murderer. This was an unreasonable application of clearly established federal law.** The

Pennsylvania Superior Court expected Petitioner to demonstrate that Musselwhite was the murderer, before he could introduce evidence that he admitted to being such. The Pennsylvania Superior Court felt that Musselwhite had to be a better witness than the cast of characters that the Commonwealth called against Petitioner.

As *Holmes v. South Carolina* is the last of the three important cases relevant here, reviewing such is a good step in isolating the clearly established federal law regarding Petitioner's claim. After setting forth the important cases in this area of the law – *Chambers*, *Green* as well as *Crane v. Kentucky*, 476 U.S. 683 (1986) and *Washington v. Texas*, 388 U.S. 14 (1967) – the Supreme Court stated the following:

> 1. "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. See, *e.g.,* Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904). **Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues."** *Crane*, 476 U.S., at 689–690.

> 547 U.S. at 326-27. **(The evidence that Musselwhite admitted to committing the crime was not this type of evidence.)**

> 2. "[E]vidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a

conjectural inference as to the commission of the crime by another, is not admissible.... [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party."

547 U.S. at 328. **(Evidence that someone else admitted to committing the crime is evidence inconsistent with the guilt of the defendant charged with that crime.)**

3. "Furthermore, as applied in this case, the South Carolina Supreme Court's rule seems to call for little, if any, examination of the credibility of the prosecution's witnesses or the reliability of its evidence. Here, for example, the defense strenuously claimed that the prosecution's forensic evidence was so unreliable (due to mishandling and a deliberate plot to frame petitioner) that the evidence should not have even been admitted. The South Carolina Supreme Court responded that these challenges did not entirely "eviscerate" the forensic evidence and that the defense challenges went to the weight and not to the admissibility of that evidence. (citation omitted) Yet, in evaluating the prosecution's forensic evidence and deeming it to be "strong"—and thereby justifying exclusion of petitioner's third-party guilt evidence— the South Carolina Supreme Court made no mention of the defense challenges to the prosecution's evidence.

Interpreted in this way, the rule applied by the State Supreme Court does not rationally serve the end that the *Gregory* rule and its analogues in other jurisdictions were designed to promote, *i.e.,* to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues. The rule applied in this case appears to be based on the following logic: Where (1) it is clear that only one person was involved in the commission of a particular crime and (2) there is strong evidence that the defendant was the perpetrator, it follows that evidence of third-party guilt must be weak. But this logic depends on an accurate evaluation of the prosecution's proof, and the true strength of the prosecution's proof cannot be assessed without considering challenges to the reliability of the prosecution's evidence. Just because the prosecution's evidence, *if credited,* would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case. And where the credibility of the prosecution's witnesses or

the reliability of its evidence is not conceded, the strength of the prosecution's case cannot be assessed without making the sort of factual findings that have traditionally been reserved for the trier of fact and that the South Carolina courts did not purport to make in this case."

547 U.S. at 329-30. **(The evidence against Petitioner was far from overwhelming as evidenced by the four trials and the clear compromise verdict.)**

"Few rights," the Supreme Court has held, "are more fundamental than that of an accused to present witnesses in his own defense." *Chambers*, 410 U.S. at 302 (citing *Webb v. Texas*, 409 U.S. 95 (1972). Where exactly this right comes from is unclear – maybe due process, compulsory process, confrontation or right to a fair trial – but the significance of this right and the fact that is constitutional, is clear. In *Old Chief v. United States*, 519 U.S. 172, 188 (1997), our Supreme Court emphasized that there is "the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be," and juries "may well hold the absence of that evidence against the party" who fails to provide it. Id. at 188 n.9 Clearly in a case like that brought against Petitioner, a rational juror could have wondered whether there were any other suspects.

In short (Counsel is not blind to the irony of that preface), there is no case from the United States Supreme Court that justified not permitting Petitioner to introduce clear evidence that Musselwhite made what amounted to an excited utterance admitting that he killed the man that Petitioner was charged with killing.

The clearly established federal law absolutely mandated that such evidence was admissible.

The Superior Court addressed this issue as one involving the abuse of discretion standard. *Commonwealth v. Tielsch*, 934 A.2d at 89-90. The Superior Court essentially sought to, and Petitioner states this with all due respect, distinguish the federal cases by "nitpicking" subtle and inconsequential differences between the Musselwhite evidence and that excluded by the state courts in *Chambers* and *Green*. Id. at 90-91. That is what an advocate does, not an appellate court. The decision of the Superior Court was an unreasonable application of clearly established federal law. It was also based on an unreasonable determination of the facts.

## Claim 2: Ineffective Assistance of Counsel – Failure to Argue Excited Utterance

Claims of ineffective assistance of counsel must be raised on collateral review pursuant to *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). Petitioner raised this claim in his PCRA Petition and subsequent appeal to the Superior Court. Following the Superior Court's decision affirming the lower court's denial of Petitioner's PCRA, Petitioner sought reargument further supported by the law with regard to this claim. Petitioner clearly developed this argument in the Application for Reargument. It is difficult to know what argument or law the Pennsylvania Superior Court wanted. In other words, appellate counsel abandoned the issue. There can be no strategic basis for such, since the argument was meritorious. Trial counsel argued that the

Musselwhite statement to Maddich was an excited utterance. The statement was an excited utterance and because no evidentiary hearing was given to Petitioner, it is unknown why appellate counsel did not simply argue that the statement was an excited utterance. It is possible that appellate counsel knew the Pennsylvania Superior Court would review such under an abuse of discretion standard, but that is the review it gave to the constitutional argument anyways.

The Superior Court denied Petitioner's request for reargument, however, a state court's finding of waiver does not "bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." *Fay v. Noia*, 372 U.S. 391, 439 (1963). Petitioner's federal rights, specifically his Sixth Amendment right of assistance of counsel and his Fourteenth Amendment right of procedural due process were violated by his appellate counsel's ineffectiveness in not raising and advancing the issue that the statement of Chuck Musselwhite to Stephanie Maddich was an excited utterance.

*Strickland v. Washington*, 466 U.S. 668 (1984) has long been the prevailing standard on claims of ineffective assistance of counsel. The *Strickland* test requires that (1) the defendant must show that counsel's performance was deficient, and (2) the defendant must show that the deficient performance prejudiced the defense. *Id.* at 687. Counsel's representation is judged by an objective standard of reasonableness. *Id.* Here, after Petitioner's unsuccessful attempt to introduce

Musselwhite's testimony under the excited utterance exception at trial, appellate counsel failed to bring the claim on direct appeal.

On direct appeal, *Commonwealth v. Tielsch*, 934 A.2d 81 (Pa. Super. 2007), despite appellate counsel not raising the issue, Judge Bowes, in her dissenting opinion, noted that such a "frantic telephone call on the night of the murder had earmarks of reliability" and "Musselwhite's statement to Ms. Maddich . . . bore all the earmark of trustworthiness exhibited by an excited utterance." *Id*. at 89, fn. 12 (Bowes, J., dissenting). While the majority chose to not address the issue of the admissibility of the statement *sua sponte*, the fact that one of the judges reviewing the case indicated the strength of a claim that was not raised, speaks to the deficiency of counsel's performance.

Respondent asserts that Petitioner has failed to prove that appellate counsel acted unreasonably, and that it is well established practice to focus on the strongest issues or arguments on appeal (ECF Doc. 20, p. 24), however, the facts prove that appellate counsel did act unreasonably. Trial counsel thoroughly raised the issue of the admissibility of Musselwhite's statement during Petitioner's second trial, and renewed his efforts during Petitioner's fourth trial. Despite counsel's multiple attempts to admit the statement, highlighting its importance, appellate counsel did not raise the issue on direct appeal, which Petitioner contends is "not the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Petitioner must then show that this deficient performance prejudiced the defense. The threshold question is "whether there is a reasonable probability that, absent errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. The defendant must show that there is a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. 694. There is a reasonable probability that the introduction of evidence which reliably implicated someone else, other than the defendant, as the person who committed the crime, would have changed the jury's perception of reasonable doubt respecting guilt. Counsel's failure to appeal the trial court's decision excluding such evidence, therefore, prejudiced the defendant.

## Claim 3: Prosecutorial Misconduct

## Exhibit 31

Petitioner raised the issue of prosecutorial misconduct on direct appeal. Subsequently, in his PCRA petition, Petitioner raised the claim of ineffective assistance of appellate counsel for failing to effectively litigate the prosecutorial misconduct issue. Claims of ineffective assistance of counsel must be raised on collateral review pursuant to *Commonwealth v. Grant*. This issue was therefore raised on direct appeal, and subsequently on collateral review in Petitioner's habeas petition, and is therefore not procedurally defaulted.

In cases of prosecutorial misconduct, the Supreme Court has consistently upheld that the focus of a due process analysis is the fairness of the trial, not the culpability of the prosecutor. The Court in *Smith v. Phillips*, 455 U.S. 209, 219 (1982) stated that a prosecutor's conduct "'violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Id.* at 219 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). Respondent's reliance on the Pennsylvania Superior Court's analysis of Petitioner's prosecutorial misconduct claim, on direct appeal, *Commonwealth v. Tielsch*, 934 A.2d 81 (Pa. Super. Ct. 2007), is therefore misguided. Respondent summarizes the holding of Pennsylvania Superior Court regarding this claim stating the "[c]ourt found that although the prosecutor was mistaken in his assertion, there was absolutely no evidence of a deliberate misstatement." (ECF Doc. 20, p.28). Petitioner has never been given an evidentiary hearing. The AEDPA and caselaw grant evidentiary hearings to petitioner, if they have been denied the right to develop a record in state court. *Campbell v. Vaughn,* 209 F.3d 280, 286-87 (3d Cir. 2000).

The instance of prosecutorial misconduct here, the introduction of an exhibit purporting to show the destruction of the vehicle involved in the crime, is tied directly to the guilt of the defendant. The prosecutor, in Petitioner's first trial, introduced the title history of a Corvette, alleging it to be the car used in the perpetration of the crime. The prosecutor then referenced the document in the

Commonwealth's closing argument, stating that the Petitioner's uncle destroyed the car in 1998. It was later discovered that the document was wholly unrelated to Petitioner's case. Respondent itself states that the prosecutor relied on the exhibit as "evidencing actions taken to hide Petitioner's guilt." (ECF Doc. 20, p. 28). This conduct, by the prosecutor whether in good or bad faith, violated Petitioner's right to due process because the evidence was material to Petitioner's alleged guilt. *Smith v. Phillips*, 455 U.S. at 219.

Furthermore, Respondent alleges that Petitioner acknowledged that the prosecutor made an honest mistake, but Petitioner conceded no such thing. In making this assertion, Respondent draws the court's attention to Exhibit "4" at 77; there is no such Exhibit attached to the document. ECF Doc. 20, p. 28. No such concession was ever made. The Pennsylvania Superior Court would have highlighted such a concession.

The excuses for Exhibit 31 have included:

### Commonwealth Brief to Superior Court on Direct Appeal – ECF No. 1-20, p.23

Prosecutor was unaware that the document was incomplete or inaccurate. Prosecutor claims that the document was introduced in exactly the same form as he received it. (TT1 at 1809). Only after inquiry with PennDOT by the parties and the trial court was it determined that the relevant page of the document, relied on by the prosecutor, actually contained information relating to two different vehicles. It was

determined that the mistaken interpretation was due to the omission of a page which would have demonstrated that two separate vehicles were being reported. (TT1 at 1806-09).  **Petitioner asks the Commonwealth to now produce these pages.**

**Commonwealth's Answer to Habeas Petition – ECF No. 20, p.28**

The prosecutor relied not on the actual exhibit, but a loose-leaf copy of a detective's file. It turned out that the page relied on was actually from another unrelated report.

In Respondent's Answer to Habeas Petition (ECF No. 20, p.28), Respondent boldly asserts that the Petitioner acknowledged that prosecutor made an honest mistake regarding Exhibit 31. In making this assertion, the Respondent directs this Honorable court's attention to "Exhibit 4 at 77." No such page number exists in Exhibit 4 attached to Respondent's Answer. On page 6 of Exhibit 4, however, Respondent states that "Tielsch acknowledges in his brief, the prosecutor 'claimed that he made an honest mistake due to confusion by a missing page in Exhibit 31.'" The quoted material actually comes from page 77 of Petitioner's Brief to the Pennsylvania Superior Court on direct appeal. Respondent clearly misconstrues Petitioner's statement. Petitioner simply stated that the prosecutor *claimed* to have made an honest mistake, not that the Petitioner himself accepted or acknowledged the prosecutor's actions as honest or inconsequential.

### Michael Starr

This Honorable Court has seen the transcript of Michael Starr's Rule 35 Hearing. Appellant has not. ADA Fitzsimmons testified for Starr at such and Starr received a significant reduction in sentence. Recently, in *Fisher v. Somerset SCI, 591 Fed.Appx. 118* (3d Cir. 204), a case with a long history, the Third Circuit clearly indicated that direct proof of an agreement between the Commonwealth and one of its witnesses is not necessary to establish a *Brady* violation. Id. at 122-23. The Third Circuit looked to the timing of the preferential treatment its witness received. Petitioner had no direct proof of the *Brady* violation regarding Starr, but he was never given an opportunity to develop such. If this Honorable Court looks to the timing of Fitzsimmons' assistance to the time Starr testified, Petitioner submits that he has established a *Brady* violation and substantiated a claim of prosecutorial misconduct by the Commonwealth in permitting Starr to lie while testifying.

**With respect to Exhibit 31, this would be the type of evidence that would have barred the second, third and fourth trial. The same would be said of the *Brady* violation regarding Starr.  The Starr issue though would also justify a new trial.**

### Claim 4: Ineffective Assistance of Counsel – Right to Testify

Respondent suggests that Petitioner is not clear on whether he is contending he innocent of the federal conviction or the conviction at issue here. (ECF Doc. 20,

p. 30). Petitioner cannot address Respondent's purported confusion as he simply does not understand it. When one reads the rather short description of Petitioner's argument contained in the memorandum he attached to his petition (Exhibit "C"), maybe Petitioner could have been clearer, but his contention is that he clearly wanted to testify and was advised not to. Unless the Commonwealth thought that Petitioner might want to testify that he committed the murder in the matter, it is clear that Petitioner is asserting that he innocent of the crime at issue here and that he wanted to testify at trial.

The Commonwealth focuses on a colloquy done during trial. (ECF Doc. 20, pp. 32 – 33). That colloquy, however, has nothing to do with whether trial counsel was ineffective in the reason he had for advising Petitioner not to testify. It is shocking that Appellant was not given an evidentiary hearing on this issue in state court.

Respectfully submitted,

/s/: Robert E. Mielnicki, Esquire
ROBERT E. MIELNICKI
Attorney for Petitioner
428 Forbes Ave.
Suite 400
Pittsburgh, PA 15219
(412) 288-0300
Attorney for Petitioner

## **CERTIFICATE OF SERVICE**

I certify that on the date indicated below, I served a copy of the Brief on the below listed individual by

first-class mail and via electronic filing:


Rusheen Pettit, Esquire
Allegheny County District Attorney
RPettit@alleghenycountyda.us


DATE <u>10/1/17</u>                                          <u>s/Robert E. Mielnicki, Esquire</u>
Robert E. Mielnicki, Esquire
PA ID No. 63489
428 Forbes Avenue
Suite 400
Pittsburgh, PA 15219
(412) 288-0300
rmielnick@comcast.net